1
2
3
4
5
6
7
8          IN THE UNITED STATES DISTRICT COURT
9       FOR THE EASTERN DISTRICT OF CALIFORNIA
10
11  IGNACIO CEJA,
12                            No. 2:06-cv-01574-MMM
13            Petitioner,
14
15    vs.
16
17  KERN VALLEY STATE PRISON, Warden, et al.,
18                            ORDER
19           Respondent.
20
21
22       Ignacio Ceja ("Ceja"), a California prisoner, filed a Petition for Writ of

23  Habeas Corpus pursuant to 28 U.S.C. § 2254.  He challenges his conviction for

24  voluntary manslaughter and assault with a deadly weapon, as well as his sentence.

25  Ceja claims that his federal constitutional rights were violated because: (1) the trial

26  court erred in presenting a jury instruction that lightened the prosecution's burden

27  of proof, in violation of Ceja's due process right to a fair trial, and (2) the trial

28  judge erred in relying on factors not presented to a jury when sentencing Ceja to an

29  upper term sentence, in violation of Blakely v. Washington, 542 U.S. 296 (2004).

30       Respondent, the Warden, filed an Answer to the Petition with an attached

1    Memorandum of Points and Authorities in Support, and lodged portions of the

2    state court record. The Warden contends that habeas relief is unavailable because

3    Ceja has not shown that the state court's adjudication of his claims was contrary to

4    or an unreasonable application of clearly established federal law.

5        For the following reasons, the court finds that Ceja is not entitled to habeas

6    relief as to any claim presented, and DENIES the petition.

7                              **STATE PROCEEDINGS**

8        A jury found Ceja guilty of voluntary manslaughter, in violation of Cal.

9    Penal Code § 192, and the personal use of a firearm in the commission of that

10   offense, in violation of Cal. Penal Code §§ 1203.06(a)(1) and 12022(a)(1). The

11   jury found Ceja not guilty of murder as charged, opting instead for the lesser-

12   included offense of voluntary manslaughter. Ceja was also found guilty of assault

13   with a firearm on a person, and the personal use of a firearm in the commission of

14   that offense, in violation of Cal. Penal Code sections 1203.06(a)(1) and

15   12022.5(a)(1). The state court sentenced Ceja to an aggregate term of 23 years and

16   4 months.

17       Ceja appealed his convictions to the California Court of Appeal, Third

18   Appellate District, presenting his jury instruction claim. The appellate court, in an

19   unpublished opinion, affirmed the conviction. Ceja filed a petition for review in

1    the California Supreme Court, again presenting the jury instruction claim.  That

2    petition was denied by an order which stated in full: "Petition for review

3    DENIED."

4         Shortly before the California Supreme Court denied the petition for review,

5    the United States Supreme Court filed its opinion in Blakely v. Washington, 542

6    U.S. 296 (2004).  In response, and after the California Supreme Court denied his

7    petition, Ceja filed with the court of appeal a Motion to Recall Remittur and

8    Reinstate Appeal and Request for Leave to File Supplemental Brief on his Blakely

9    claim.  That motion was denied.  Ceja then filed a habeas petition in the California

10   Supreme Court, asserting that the trial court illegally imposed the aggravated terms

11   in his sentencing, in violation of Blakely.  On July 12, 2006, that petition was

12   summarily denied without citation of authority or a statement of reasoning.

13                          **FACTUAL BACKGROUND**

14        The California Court of Appeal summarized the facts of Ceja's case as

15   follows:[1]

16            Defendant [Ceja] and his wife, Mandy, had a volatile relationship,
17       during which they had a number of altercations which also involved
18       Mandy's brothers, Harold and Curtis.

---

    [1]    In his Petition for Review to the California Supreme Court, Ceja
adopted the statement of facts and statement of the case contained in the Court of
Appeal's opinion.

On May 12, 2002, Mandy and defendant were gathered at defendant's parent's home for a mother's day celebration. Mandy got into an argument with defendant's family, and defendant asked her to leave. Mandy left and told her son, Ray, to call the police. Instead, Ray called Curtis. Defendant left with one of their children.

After the call, Harold showed up at Curtis's house, and they drove to defendant's family's home. When they arrived, a number of defendant's family members were in the front yard. Harold spoke with defendant's father and then tried to get Mandy's children into the car to leave.

About 10 minutes later, defendant returned and he and Mandy began to argue again. Mandy told defendant her brothers were there to "check" his brother, and defendant responded, "Fuck your brothers." Curtis responded in kind and threw a soda can at defendant and a fight between the two ensued. Defendant's family joined in the fracas and were hitting Curtis with bricks. Eventually, the fight was broken up and defendant left the front yard. Mandy had left during the fight to call the police.

Defendant's father got a crowbar and tried to start another fight with Curtis, swinging the crowbar at Curtis's head. Defendant came back to the front yard with a gun. Defendant waved the gun and shot Curtis in the leg. Harold ducked down by the side of the car and defendant walked over to him and shot him four or five times while Harold was on the ground. He did not stop shooting until he was out of bullets. Harold's fiancée drove him to the hospital where he died in surgery. Harold had been shot five times, two of which were lethal shots.

When Mandy returned to the scene, defendant was not there and she did not see him until he turned himself in a few days later. Mandy's son, Ray, saw defendant leave the area in a car. Another of Mandy's sons, Cassell, also noted defendant left the scene after the shooting.

Upon arriving at the scene, officers attempted to locate defendant, but could not. The following day, officers asked defendant's sister where he was but she said she did not know. Officers made several efforts to locate defendant. He was identified to the media as a suspect, a team of special investigators were sent out to try to find him and they sought the assistance of defendant's family. Defendant turned himself

4

1   in on May 15, 2002. At that time, they took photographs of his body,
2   noting only a few scrapes on his neck and knee and some scratches on
3   his back.

4        Defendant claimed he was acting in self-defense in shooting Curtis
5   and Harold, or that he was acting in the heat of passion or in imperfect
6   self-defense.

7

8

9   **DISCUSSION**

10  **I. Standard of Review**

11  This court may entertain a petition for writ of habeas corpus "in behalf of a

12  person in custody pursuant to the judgment of a State court only on the ground that

13  he is in custody in violation of the Constitution or laws or treaties of the United

14  States." 28 U.S.C. § 2254(a).

15  The writ may not be granted with respect to any claim that was adjudicated

16  on the merits in state court unless the state court's adjudication of the claim:

17  "resulted in a decision that was contrary to, or involved an unreasonable

18  application of, clearly established Federal law, as determined by the Supreme

19  Court of the United States; or (2) resulted in a decision that was based on an

20  unreasonable determination of the facts in light of the evidence presented in the

21  State court proceeding." 28 U.S.C. § 2254(d).

22  "Under the 'contrary to' clause, a federal habeas court may grant the writ if

23  the state court arrives at a conclusion opposite to that reached by [the Supreme]

5

1   Court on a question of law or if the state court decides a case differently than [the]

2   Court has on a set of materially indistinguishable facts." <u>Williams v. Taylor</u>, 529

3   U.S. 362, 412-13 (2000). "Under the 'reasonable application clause,' a federal

4   habeas court may grant the writ if the state court identifies the correct governing

5   legal principle from [the] Court's decisions but unreasonably applies that principle

6   to the facts of the prisoner's case." <u>Id.</u> at 413.

7        "A federal habeas court may not issue the writ simply because the court

8   concludes in its independent judgment that the relevant state-court decision applied

9   clearly established federal law erroneously or incorrectly. Rather, that application

10  must also be unreasonable." <u>Id.</u> at 411. A federal habeas court making the

11  "unreasonable application" inquiry should ask whether the state court's application

12  of clearly established federal law was "objectively unreasonable." <u>Id.</u> at 409.

13       The only definitive source of clearly established federal law under 28 U.S.C.

14  § 2254(d) is in the holdings of the Supreme Court as of the time of the state court

15  decision. <u>Id.</u> at 412. While circuit law may be "persuasive authority" for purposes

16  of determining whether a state court decision is an unreasonable application of

17  Supreme Court precedent, only the Supreme Court's holdings are binding on the

18  state courts and only those holdings need be "reasonably" applied. <u>Id.</u>

19       When a federal court is presented with a state court decision that is

1   unaccompanied by a rationale for its conclusions, the federal court has no basis

2   other than the record "for knowing whether the state court correctly identified the

3   governing legal principle or was extending the principle into a new context."

4   Delgado v. Lewis, 223 F.3d 976, 981-82 (9th Cir. 2000).  In such situations,

5   federal courts must conduct an independent review of the record to determine

6   whether the state court decision is objectively unreasonable.  Id.  While federal

7   courts "'are not required to defer to a state court's decision when that court gives

8   [them] nothing to defer to, [they] must still focus primarily on Supreme Court

9   cases in deciding whether the state court's resolution of the case constituted an

10  unreasonable application of clearly established federal law.'" Greene v. Lambert,

11  288 F.3d 1081, 1089 (9th Cir. 2002) (quoting Fisher v. Roe, 263 F.3d 906, 914

12  (9th Cir. 2001)).  Independent review of the record is not de novo review of the

13  constitutional issue, but rather the only way a federal court can determine whether

14  a silent state court decision is objectively unreasonable. Himes v. Thompson, 336

15  F.3d 848, 853 (9th Cir. 2003).

16  **II. Claims**

17          **A. Jury Instruction Error**

18          Ceja argues that the trial court violated his Fifth and Fourteenth Amendment

19  right to due process by giving the jury a flight instruction.  In his trial, Ceja

7

1    explains, the "only contested issue was the mental state of the petitioner when he

2    killed a family member during a physical altercation. Prosecution used evidence of

3    his flight from the scene to argue he had the mental state for premeditated first

4    degree murder. The defense argued self defense, but the prosecution argued that if

5    he killed in self defense, he would not have fled." The jury convicted Ceja of

6    voluntary manslaughter, not first degree murder.

7         The California Court of Appeal rejected Ceja's claim that the instruction on

8    flight lowered the prosecution's burden of proof:

9         Defendant contends the flight instruction as given, and as argued
10   by the prosecutor, was an improper pinpoint instruction and denied him
11   a fair trial. We are not persuaded. The evidence of flight from the scene
12   did not factor into the prosecution's closing argument.   Defense
13   counsel's closing argument focused on defendant's claim of self-defense.
14   In making this claim, he alluded to defendant's flight from the scene as
15   an explanation of why defendant's injuries following the fight were
16   relatively minimal. He also argued, in the alternative, that viewed in the
17   context of their violent relationship and the size differences between
18   defendant and Harold and Curtis, either a claim of heat of passion or
19   imperfect self-defense should reduce the charge from murder to
20   voluntary manslaughter.
21        In refuting this claim of self-defense, heat of passion, and
22   imperfect self-defense, the prosecution argued on rebuttal, again without
23   objection, "The law is going to tell you this. When a guy flees from the
24   scene of a crime, it's insufficient by itself to prove someone guilty of
25   murder, but it certainly shows a consciousness of guilt, and that shows
26   that he didn't act reasonably. If you honestly thought in your heart of
27   hearts that what you thought was reasonable and right, which is one of
28   the voluntary manslaughters, you'd stick around and you'd say, hey, the
29   guy was going to kill me, I had to shoot him. The law says when a guy

1  jumps in the car and says, 'Get me out of here,' and Michael says 'No,
2  get out of my car,' and he flees the scene before the witnesses can get
3  back from the store, that shows a clear consciousness of guilty. That's
4  not me telling you that, that's the law."
5  　　　The jury was instructed, without objection, that "The flight of a
6  person immediately after the commission of a crime or after he is
7  accused of a crime, is not sufficient in itself to establish his guilt, but is
8  a fact which, if proved, may be considered by you in the light of all other
9  proved facts in deciding whether a defendant is guilty or not guilty. The
10  weight to . . . which this circumstance is entitled is a matter for you to
11  decide." (CALJIC No. 2.52)
12  　　　. . .
13  　　　Defendant does not challenge the sufficiency of the evidence
14  supporting the giving of this instruction. Rather, he challenges the
15  instruction itself as improper, arguing that "pinpointing flight evidence
16  as evidence of guilty is improper and lightened the prosecution's burden
17  of proof." This same claim has been rejected by our Supreme Court.
18  "We also reject defendant's argument that the flight instruction is an
19  improper pinpoint instruction. The instruction informs the jury that it
20  may consider flight in connection with all other proven facts, giving the
21  fact of flight the weight the jury deems appropriate. The instruction is
22  not argumentative; it does not impermissibly direct the jury to make only
23  one inference. Finally, defendant contends that instruction
24  unconstitutionally lessens the prosecution's burden of proof. It does
25  not." (People v. Mendoza (2000) 24 Cal. 4th 130, 180; see also People
26  v. Boyette (2002) 29 Cal.4th 381, 438-439).
27

28  　　　The California Court of Appeal's rejection of the jury instruction claim was

29  neither contrary to, nor involved an unreasonable application of, clearly established

30  Supreme Court precedent. 28 U.S.C. § 2254(d). Nor did it involve an

31  unreasonable determination of the facts. Id. As the state court noted, the flight

32  instruction informed the jury that it *may* consider flight, but the instruction did not

9

1    direct the jury to make only one inference.  The instruction explicitly stated that the

2    "flight of a person immediately after the commission of a crime or after he is

3    accused of a crime is not sufficient in itself to establish his guilt."  Thus, the

4    instruction itself does not provide a basis to conclude that there is a reasonable

5    likelihood that the jury applied the flight instruction in a manner that violates the

6    federal Constitution.  See Estelle v. McGuire, 502 U.S. 62, 72 (1991) (holding that

7    a jury instruction that is ambiguous will violate due process only when a

8    reasonable likelihood exists that the jury has applied the challenged instruction in a

9    manner that violates the federal Constitution).  To obtain federal habeas relief

10   based on an ambiguous jury instruction, a petitioner must show that the error "so

11   infected the entire trial that the resulting conviction violates due process."  Id.

12   (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)).

13          Further, considering the flight instruction "in the context of the instructions

14   as a whole and the trial record," see id., the state court decision denying Ceja's

15   claim is reasonable.  The trial court adequately instructed the jury regarding the

16   prosecution's burden of proving guilt beyond a reasonable doubt.  See Tr. Trans.

17   914-915, instructing the jury that: "A defendant in a criminal action is presumed to

18   be innocent until the contrary is proven, and in case of a reasonable doubt whether

19   his guilt is satisfactorily shown, he's entitled to a verdict of not guilty.  This

10

1    presumption places upon the People the burden of proving him guilty beyond a

2    reasonable doubt." Considering the trial court's clear instruction concerning the

3    prosecution's burden of proof, the state court properly determined that the flight

4    instruction did not "so infect[] the entire trial that the resulting conviction violates

5    due process." McGuire, 502 U.S. at 72.

6         Even if the jury instruction on flight amounted to constitutional error, it

7    cannot be said that the error had a substantial or injurious effect on the jury's

8    verdict. See Calderon v. Coleman, 525 U.S. 141, 146-47 (1990). The instruction

9    specifically cautioned the jury not to infer Ceja's guilt from flight alone. The jury

10   necessarily had to rely on other evidence to find Ceja guilty. The uncontested facts

11   constitute overwhelming evidence—Ceja shot Harold four or five times until he

12   was out of bullets. And, considering that the jury convicted Ceja of voluntary

13   manslaughter, as opposed to murder, the jury surely did not accept the

14   prosecution's theory that if the defendant had "honestly thought in [his] heart of

15   hearts that what [he] thought was reasonable and right, which is one of the

16   voluntary manslaughters, [he]'d stick around and [he]'d say, hey, the guy was

17   going to kill me, I had to shoot him." The jury knew Ceja fled the scene, but

18   nevertheless found him guilty of voluntary manslaughter, not murder. The jury did

19   not accept the prosecution's interpretation of the significance of fleeing the scene.

1    In light of the evidence and the jury's verdict, Ceja cannot sustain a claim of

2    prejudice.  See id.  Accordingly, habeas relief is DENIED on the jury instruction

3    claim.

4    **B. Sentencing Claim**

5    Ceja explains that the trial court sentenced him to an upper term sentence on

6    count one and its enhancement, "relying on factors not presented to his jury."  Ceja

7    asserts that this procedure is a violation of the Supreme Court's decision in Blakely

8    and his rights under the Fifth and Sixth Amendments.  Because the California

9    Supreme Court denied Ceja's claim on the merits without explanation or citation to

10   authority, the court reviews this claim under the Delgado standard and conducts an

11   independent review of the record to determine whether the state court decision is

12   objectively unreasonable.  223 F.3d at 982.

13   In Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), the Court held that

14   the Fourteenth Amendment right to due process and the Sixth Amendment right to

15   trial by jury incorporated therein, require that "[o]ther than the fact of a prior

16   conviction, any fact that increases the penalty for a crime beyond the prescribed

17   statutory maximum must be submitted to a jury, and proved beyond a reasonable

18   doubt."  Id. at 476-77, 490.  In Blakely v. Washington, 542 U.S. 296 (2004), the

19   Court defined the term "statutory maximum" as used in Apprendi to mean "the

1    maximum sentence a judge may impose solely on the basis of the facts reflected in

2    the jury verdict or admitted by the defendant." Blakely, 542 U.S at 303.  Several

3    years later, the Court held that the "statutory maximum" in the California scheme

4    was the middle term, not the upper term. Cunningham v. California, 549 U.S. 270

5    (2007).  The Court went on to hold that California's sentencing scheme, as it

6    existed at the time Ceja was sentenced, violated the Sixth Amendment to the extent

7    that a state court judge was permitted to impose upper terms based on facts not

8    found by a jury beyond a reasonable doubt or admitted to by a defendant. Id. at

9    868.

10       The Ninth Circuit has held that in applying Cunningham, a federal habeas

11   court must first determine whether any of the aggravating factors relied on by the

12   sentencing judge to impose the upper term satisfies the Sixth Amendment

13   requirements, either because they were actually found by a jury beyond a

14   reasonable doubt or because they fit within the Apprendi prior conviction

15   exception. Butler v. Curry, 528 F.3d 624, 641 (9th Cir. 2008).  If a Sixth

16   Amendment violation occurred as a result of the imposition of an upper term

17   sentence, a federal habeas court must then apply the harmless error standard of

18   Brecht v. Abrahamson, 507 U.S. 619 (1993).  Butler, 528 F.3d at 648.

19       In selecting the upper term, the trial judge made the following statement:

13

1    And as punishment for the crime of voluntary manslaughter, the
2  victim being Harold Jones, the defendant is sentenced to state prison for
3  the upper term of eleven years.
4    The Court selects the upper term because, as opposed to a situation
5  where one could argue that this was a fluke or a weird circumstance that
6  caused the victim's death, such as a ricochet or one shot fired at the
7  victim at an extremely long distance that, unbelievably, happens to hit
8  the victim in a vital location, here the defendant walks up to the criminal,
9  who is unarmed and is not attacking the defendant—although with the
10  understanding that there's some conflict to that—and shoots—well, at
11  the time he shot, there was no attack, and shoots the victim at close range
12  five times.
13    In other words, the upper term is appropriate because the killing
14  involved a high degree of viciousness and callousness, if not
15  premeditation and deliberation.
16    The defendant has a relatively—also the defendant has a relatively
17  long criminal history for a twenty-six-year old.  And his behavior, while
18  incarcerated on this case, has been less than exemplary, that is, he's had
19  several write-ups for misbehavior.
20    The Court also will follow the recommendation of the probation
21  department that the upper term of ten years be imposed on the defendant
22  for Penal Code Section 12022.5, use of firearm allegation.  Here the
23  defendant was on formal probation when the crime was committed,
24  felony probation for Penal Code Section 69 conviction.
25    It should be noted that for the use of a firearm, there are uses and
26  then there are uses.  And what I mean by that is that you can commit the
27  offense 12022.5, use of a firearm, by simply as little as brandishing a
28  weapon, by showing it in a threatening manner.  That can be a use.  It
29  can't be inadvertent, but as long as it's purposefully showing that
30  weapon, that is sufficient for use of a firearm.
31    Here the defendant shot the victim.  The use consisted of shooting
32  the victim five times at point blank range.  This is the other extreme end
33  of the scale.  The victim was particularly vulnerable in the sense that he
34  was unarmed in a nonthreatening mode.
35    This shooting, although it did not demonstrate sophistication or
36  professionalism, there is some evidence of planning in that the defendant
37  had obtained the weapon some weeks earlier, and on this date decided to

14

1   go back into the house to get his weapon, come back outside, and kill the
2   victim.
3           It should also be noted the defendant has suffered a conviction for
4   Penal Code section 12025, illegal possession of a firearm, in 1996.
5
6   Tr. Trans., 976-978.[2]

7       Considering the trial judge's explanation, the court must determine whether

8   any one of the factors relied on by the trial judge for each upper term sentence was

9   either found by the jury beyond a reasonable doubt or fit within the narrow

10  Apprendi exception.  The obvious starting point is to examine the factors relied on

11  by the trial judge that relate to Ceja's recidivism.

12      In selecting the upper term sentence for the voluntary manslaughter

13  conviction, the trial judge noted that "the defendant has a relatively long criminal

14  history for a twenty-six-year old." Tr. Trans. at 977.  Ceja's probation report,

15  which was before the judge at the time of sentencing, listed a number of juvenile

16  adjudications and adult convictions. Supplemental Clerk's Tr. at 256-62.  This

17  factor fits within the "narrow" Apprendi exception for prior convictions.  530 U.S.

18  at 490.  Because this factor survives Sixth Amendment scrutiny, and because "only

19  one aggravating factor is necessary to set the upper term" under California law, no

20  Sixth Amendment violation occurred in sentencing Ceja on the conviction for

_____

    [2] For Count Two, the trial court sentenced Ceja to "one-third the mid term."
That mid-term sentence is not at issue in this petition.

15

1    voluntary manslaughter.  See Butler, 528 F.3d at 648-49.

2         In selecting the upper term sentence for the use of a firearm conviction in

3    connection with Ceja's voluntary manslaughter conviction, the trial court "noted

4    the defendant has suffered a conviction for Penal Code Section 12025, illegal

5    possession of a firearm, in 1996." Tr. Trans. at 978.  Ceja's conviction for the

6    previous firearm offense was detailed in the probation report that was before the

7    court at the time of sentencing.  Supplemental Clerk's Tr. at 259.  This factor also

8    fits within the "narrow" Apprendi exception for prior convictions.  530 U.S. at 490.

9    Because this factor survives Sixth Amendment scrutiny, and because "only one

10   aggravating factor is necessary to set the upper term" under California law, no

11   Sixth Amendment violation occurred in sentencing Ceja for the firearm

12   enhancement to the voluntary manslaughter conviction.  See Butler, 528 F.3d at

13   648-49.

14        Accordingly, habeas relief is DENIED on the sentencing claim.

15                              **CONCLUSION**

16        The petition for writ of habeas corpus is DENIED.

17
18   Dated: August 12, 2009                 _M Margaret McKeown_
19                                          HON. M. MARGARET MCKEOWN
20                                          UNITED STATES CIRCUIT JUDGE
21                                          Sitting by Designation

                                    16